[Civ. No. 7298. Third Dist. Jan. 2, 1947.]

J. T. RISHWAIN et al., Appellants, v. EDWARD R. SMITH et al., Respondents.

Gumpert & Mazzera and J. Calvert Snyder for Appellants.

L. A. Mills and O. C. Parkinson for Respondents.

THOMPSON, J.—The plaintiffs have appealed from a judgment which was rendered against them in a suit in unlawful detainer. Defendants bought plaintiffs' partnership business in Stockton, including the merchandise, fixtures and equipment, for $400,000. The written agreement of sale included, as part consideration therefor, a lease, or agreement to lease the store buildings for two years on specified terms, with a provision that plaintiffs would execute a more specific

lease in accordance therewith, which they failed to do. The defendants took possession of the buildings pursuant to that agreement and paid the rent. Defendants' answer sets up their fulfillment of the agreement, part performance and other equitable defenses to the suit for unlawful detention. The court determined that defendants were not unlawfully withholding the property.

The plaintiffs contend that since the defendants took possession of real property under a written memorandum for a lease which contemplated the subsequent execution of a more formal lease which has not been executed, the defendants are unlawfully withholding possession thereof, and that, since the wives of plaintiffs did not sign the written agreement to lease the property, it cannot be enforced.

On the theory that defendants were holding the property as tenants at will, since no formal lease had been executed, a thirty-day notice to vacate was served under section 789 of the Civil Code, after which this suit for unlawful detention, under section 1161 of the Code of Civil Procedure, and demand for treble damages pursuant to section 735 of the last mentioned code, was commenced. The answer denied the material allegations of the complaint, and affirmatively alleged that the defendants lawfully took and hold possession of the real property with the consent of plaintiffs, under a written agreement for a lease, dated October 30, 1944, for a term of two years, with an option to renew it for three years more, at the rental of $400 per month; that said agreement provides that plaintiffs would execute a more specific lease "in the usual standard form of business leases in this area," according to the stipulated terms of the agreement, which they failed and refused to do; that the defendants took possession and paid all rent and complied with the terms and conditions of said agreement, and that they are and at all times have been willing to execute a lease in accordance therewith; that said written agreement contains all essential terms constituting a valid lease, and that the defendants are not unlawfully withholding possession of the property.

The cause was tried by the court sitting without a jury. Findings were adopted favorable to the defendants. The court determined that the defendants entered possession of the premises as lessees November 6, 1944, with the consent of plaintiffs, under the terms of the written agreement, dated October 30, 1944, containing all essential terms of a valid

lease, including the names of the parties, the description of the property, the commencement and duration of the term, the amount of the rental to be paid monthly, and other specified terms and conditions. The court further found that the defendants paid all rental which was due; that the leased property belongs to the plaintiffs J. T. and B. T. Rishwain, as copartners; that the written agreement was made with the consent and knowledge of the respective wives of said plaintiffs, and that defendants took possession with the consent of said plaintiffs and their wives; that the renting of the property was a part of the consideration for the purchase from the owners by defendants of the business, stock of merchandise and equipment for the sum of $400,000, which was fully paid, according to the terms of said written agreement containing the provision that ''Sellers agree to execute, and Buyers agree to take and accept a lease in the usual standard form of business leases in this area,'' in accordance with the specific terms mentioned therein; that the defendants complied with the terms of their agreement; that the real estate was the partnership property of Rishwain Bros., and not the community property of any of the plaintiffs or their wives; that plaintiffs failed to execute a more formal lease in accordance with the provisions of their written agreement, but offered to the defendants a proposed lease which was not in the agreed ''usual standard form of business'' or in conformity with the stipulated terms of the written agreement; but which, on the contrary, contained ''onerous'' terms contrary to the stipulations of the written agreement. Judgment was accordingly rendered against plaintiffs to the effect that they take nothing by their action.

Subdivision 8 of the written agreement reads as follows:

''8. Sellers are the owners of the real property in which is contained the Stockton office and warehouse of said business. The said Sellers agree to execute, and Buyers agree to take and accept a lease in the usual standard form of business leases in this area, which lease shall be for the term of two years commencing as of November 6, 1944, with a monthly rental of said Stockton office and warehouse of $400.00, and with an option unto Buyers to continue said lease in effect for three further years from its original expiration date at the same rental and under the same terms and conditions. In this lease Sellers shall be obligated to pay only city and county real property taxes, fire insurance upon the said build-

ing, and the cost of maintaining the roof and the foundation of the buildings thereof. All other costs and expenses of all kind, nature and description pertaining to the occupancy by Buyers of said Stockton premises, and the maintenance thereof shall be borne and paid for by Buyers. Said lease shall further contain the usual clause against subletting and assignments by Buyers (lessees therein). However, the clause against subletting and assignments shall not be arbitrary and if Buyers shall desire to assign said lease or sublet any portion of said premises to any third party of sound financial responsibility, then Sellers shall consent to such assignment or subletting upon condition that Buyers shall act as and be guarantors for payment of all rentals under said lease if so assigned in whole or in part.''

The findings are supported by the evidence. ▮ Assuming, without so deciding, that the written agreement to lease real property contemplates a subsequent more formal lease in accordance with the specified terms contained therein, which will therefore not support an action for specific performance (*Store Properties, Inc.* v. *Neal*, 72 Cal.App.2d 112 [164 P.2d 38]), we are nevertheless of the opinion the defendants are not unlawfully withholding possession under the circumstances of this case for the reasons that defendants took possession of the buildings in Stockton, with the consent of plaintiffs, under the terms of a written agreement between the owners and the defendants containing all the essential elements of a valid two-year lease at a fixed monthly rental (*Levin* v. *Saroff*, 54 Cal.App. 285 [201 P. 961]), with the definite provision therein that the owners ''agree to execute . . . a lease in the usual standard form of business leases in this area, which lease shall be for the term of two years commencing as of November 6, 1944, with a monthly rental of said Stockton office and warehouse of $400.00,'' etc. The agreement to lease was an important part of the consideration mentioned in the written agreement of October 30, 1944, by the terms of which the defendants purchased from the plaintiffs, Rishwain Brothers, their wholesale grocery and tobacco business in Stockton, together with fixtures and equipment, previously conducted by them in the buildings in question, for the sum of $400,000, which was fully paid. The defendants took possession of the buildings and paid or tendered the stipulated rent, and performed all of their covenants incident to the proposed lease. They were at all times

ready and willing to accept and execute a more formal lease in accordance with the specified terms and conditions mentioned in the written agreement. The plaintiffs breached their written contract to sell the grocery business and lease the buildings by failure to execute or present a more formal lease in accordance with the stipulated terms of the agreement. They may not complain of defendants' occupancy of the buildings under such circumstances.

It is true that on or about November 8, 1944, plaintiffs did present to the defendants a proposed formal lease, which was rejected, and which neither party signed. It was rejected by the defendants on the grounds that it omitted specific covenants contained in the agreement, and added several onerous provisions not contained in the agreement, and because it was not "a lease in the usual standard form" agreed upon. Expert witnesses testified that several of the covenants contained in that proposed lease were not ordinarily found in the usual standard forms of leases in that vicinity. We think the objections to the proposed lease were well founded, and that it was not in conformity with the provisions of the written agreement.

The written agreement provided for a two-year lease with the option to renew it for three years more, and the privilege of assigning or subletting the lease in whole or in part "to any third party of sound financial responsibility." The proposed lease provided that it would absolutely expire at the end of the two-year term, and that it could not be assigned and no part of the premises could be sublet or leased "without the written consent of Lessor first had and received"; that the property could be used "only for the purpose of *Lessee* conducting therein . . . a wholesale grocery and wholesale tobacco business." The agreement contained no such restriction as to the use of the buildings. The only restriction of the agreement against subletting a portion of the buildings, was that it should be made to "any third party of sound financial responsibility." The agreement provides that the owners shall maintain the roof and the foundations of the buildings at their cost. The proposed lease provided that "All alterations, *repairs and improvements* permitted shall be at the sole cost and expense of Lessee." The proposed lease also declares that the lessee waives the benefits of the provisions of section 1161 of the Code of Civil Procedure, and that the lessees "hereby irrevocably appoints

Lessor as the agent and attorney-in-fact,'' in the event of their breach of covenants, to enter the premises and remove all property and *to place it in storage at the expense of the lessees.* The proposed lease prohibits the sale at auction of any property on the premises, and also makes it a breach of the lease, subject to forfeiture, if the lessees permit ''any odors or offensive smells . . . to permeate the air thereabouts, . . . [or] any harsh or loud noises or sounds . . . on or about, or to arise or come from said premises.'' No such restriction was mentioned in the written agreement.

Upon notice of rejecting said proposed lease on said grounds, among others, the plaintiffs submitted another proposed lease, which was not executed. The second form includes several of the foregoing covenants which were not included in the written agreement, and omitted other important ones contained therein. Among the objectionable provisions was one restricting the use of the premises to the lessees' sole maintenance therein of a wholesale grocery and tobacco business. That would prohibit subletting for any other purpose. It specifically prohibits the subletting of any portion of the premises to anyone for any purpose, except upon the written consent of lessors and ''upon such terms as Lessor may see fit'' to permit, and then only upon condition that the lessees shall guarantee the payment of all rentals and the fulfillment of all terms and conditions. That provision was contrary to the written agreement.

This proposed lease was also rejected for the reasons that it omitted important covenants included in the written agreement and because it included onerous covenants in absolute conflict therewith.

The defendants, although they were not required to do so, then executed and presented to the plaintiffs a proposed lease, which, upon examination, appears to be just, reasonable, and in accordance with the stipulations of the written agreement. This lease was rejected by the plaintiffs. This suit for unlawful detention was then commenced, as we have previously stated.

We conclude that the defendants did not violate their agreement to enter into a more particular lease by refusing to execute the said proposed leases presented by plaintiffs, since they failed to conform to the written agreement by omitting important provisions contained therein, and by adding thereto other onerous covenants contrary thereto, not required by

law or by "a lease in the usual standard form of business leases in this area." For those reasons the defendants were not unlawfully withholding the property.

In the Levin case, *supra,* at page 291, it is said:

"An agreement to execute a lease for a given period at a stated rental, payable in specific installments, is not broken by a refusal to execute a lease which imposes terms and conditions not imposed by law and of which no mention was made in the instrument. (24 Cyc. 899; *Sanders* v. *Pottlitzer,* 144 N.Y. 209 [43 Am.St.Rep. 757, 29 L.R.A. 431, 39 N.E. 75].)"

In that case it is also said, at page 290:

"When one party refuses to execute the lease according to the contract thus made, the other has a right to fall back on the written propositions as originally made, and the absence of the formal agreement contemplated is not material. (*Post* v. *Davis,* 7 Kan.App. 217 [52 P. 903]; *Bonnewell* v. *Jenkins,* L.R. 8 Ch.Div. 70, 74.)"

In the present case the defendants pleaded and proved an equitable defense to plaintiffs' summary proceeding of unlawful detention, as they had a right to do. That equitable defense consists of the fact that, as a part consideration for the purchase of plaintiffs' mercantile business in Stockton for the sum of $400,000, which was paid, the defendants also agreed to lease the buildings in which the business had been conducted, for the term and rental designated, and upon the specified conditions mentioned in the written agreement. That agreement was partly performed by the defendants' taking possession of the buildings and paying the stipulated rent. If a more formal lease was contemplated by the parties, as we think it was, the burden was on the plaintiffs to execute and present to the defendants such lease in substantial conformity with the expressed terms of the agreement. Plaintiffs failed to do so. They thereby breached their written agreement to lease the property. It follows that the defendants were not unlawfully withholding possession of the buildings, and the court properly determined that plaintiffs were entitled to recover nothing by their action.

An equitable defense to an action for unlawful detention of real property is proper, and when pleaded such defense should be considered in determining whether the defendants are unlawfully withholding possession. This principle has been upheld even where the defendant takes possession under an oral

agreement to lease. (*Schubert* v. *Lowe,* 193 Cal. 291, 295 [223 P. 550]; *Olympic Auditorium, Inc.* v. *Superior Court,* 81 Cal.App. 283 [253 P. 944]; *Linnard* v. *Sonnenschein,* 94 Cal.App. 729 [272 P. 315].) Under such circumstances it is immaterial that the defendants may not be entitled to specific performance of the agreement to lease in the unlawful detention proceeding. In the case of Schubert, *supra,* the Supreme Court said regarding defendant's right to invoke an equitable defense in a suit for unlawful detention:

"While the defendant was not entitled to a judgment in the present proceedings decreeing specific performance of the agreement to execute the lease, nevertheless the part performance of such an agreement can be interposed as an equitable defense to the plaintiff's attempt to wrest from him the possession of the premises by the summary proceedings in unlawful detainer. In the case of *Gray* v. *Maier, etc.,* 2 Cal. App. 653 [84 P. 280], the court, referring to the right to set up defenses of an equitable nature in such actions, had this to say: 'The power of a court of equity is invoked by plaintiff in every action in forcible detainer, when he seeks in his complaint to have a forfeiture declared on account of default in conditions of the lease, . . . . If such an equitable power is in a court in cases of this class, of which we have no doubt, no reason is apparent why such an equitable power may not be extended into a full examination of all the equities involved, to the end that exact justice may be done.' In the case of *Knight* v. *Black, supra* [19 Cal.App. 518 (126 P. 512)], it was held error on the part of the trial court to strike out the equitable defense there pleaded by the defendant in his answer. In other words, the fact that the defendant cannot obtain specific performance of an oral agreement to execute a lease does not deprive him of the right to have the court examine into the equities existing between the parties in determining whether or not the plaintiff is entitled to evict the defendant. It is a well-recognized rule of equity that part performance of an oral agreement to execute a lease for ·a longer period than a year may take the case out of the operation of the statute of frauds. [Citing authorities.]"

The court concludes in that case that:

"It was, therefore, proper for the defendant to raise, and for the court to consider, the occupation of the premises under the oral agreement to lease, as an equitable defense to the action to recover possession of the property."

That is exactly what the trial court did in the present case. The equities in favor of the defendants in this case are far stronger than in any of the cited cases in which that doctrine was upheld. We may not disturb the court's findings in that regard.

■ The appellants contend that the written agreement containing the memorandum of the terms for the lease cannot be specifically enforced since ''the wives have never executed the agreement involved.'' It is true that Joseph T. Rishwain married his wife, Rose, December 5, 1934, and that B. T. Rishwain married his wife, Mary, April 28, 1935, and that the wives did not sign the written agreement of sale of the mercantile business dated October 30, 1944. The plaintiffs, J. T. and B. T. Rishwain, who are brothers, established a wholesale grocery business in Stockton in January, 1931, before their marriages, which business was maintained under the partnership name of Rishwain Brothers. About a year later, their father, T. J. Rishwain, became a member of that copartnership, which interest he retained until August 9, 1944, when he sold it to his said sons, conveying to them his interest in the real property, consisting of the two warehouses in Stockton where the business was conducted. Their wives were not named as grantees in that deed. The partners bought the warehouse property at 829 East Weber Street in Stockton in 1935, for the sole use of the partnership business. It was deeded in the individual names of the three partners as grantees April 29, 1938. The wives were not mentioned as grantees in that deed. The warehouses were paid for by cash or property belonging to the partnership assets. All taxes, costs of repairs and maintenance were paid from the partnership funds. This property was used for no other purpose than that of the partnership business. The agreement, dated October 30, 1944, for sale of the business to defendants, including the terms of the proposed lease, designated J. T. and B. T. Rishwain as ''copartners under the firm name and style of Rishwain Bros.,'' and as owners of the buildings and property. The wives of J. T. and B. T. Rishwain had complete knowledge of the sale and of the proposed lease and the expressed terms thereof. There was some discussion between the spouses regarding the adequacy of the specified rental of $400 per month. That sum was finally agreed upon by them. On those facts and the entire evidence of the case, the court found that the real estate was the sole property of the partnership, and not the community property

of the members thereof, and that it was leased and occupied by defendants as part consideration for the agreement of sale of the business, with the consent of both the partners and their respective wives. Those findings are adequately supported by the evidence.

Even if the defendants could not enforce specific performance of the written agreement to purchase the business and to rent the buildings, because the wives of the partners had not signed the instrument, that fact could not deprive the defendants of their equitable defense against this suit for the alleged unlawful detention of the buildings. (*Schubert* v. *Lowe, supra.*) Plaintiffs failed to restore to the defendants any part of the consideration for that agreement. The defendants took possession of the buildings in reliance upon the terms of that agreement, and paid the rent. The agreement was executed by the partners with knowledge of its terms on the part of their wives. In determining the question regarding the alleged unlawful detention, the court had a discretion in deciding the equitable defenses. Those issues were determined adversely to the plaintiffs.

The partnership existed before the marriages occurred. There is evidence that the buildings were purchased as partnership property from partnership funds. The buildings were therefore partnership property, and not community property. Property acquired with partnership funds is partnership property, in spite of the fact that it may be bought in the individual names of the partners. (Civ. Code, § 2402; *Roberts* v. *Eldred,* 73 Cal. 394, 397 [15 P. 16]; *Perelli-Minetti* v. *Lawson,* 205 Cal. 642, 649 [272 P. 573]; 20 Cal.Jur. 721, § 38.)

Real property held in the individual names of partners, acquired from partnership funds and devoted to the exclusive use of the partnership business, is held in trust for the benefit of the partnership. (*Swarthout* v. *Gentry,* 62 Cal. App.2d 68, 78 [144 P.2d 38].) The burden was on plaintiffs in this case to show that the buildings were community property and not partnership assets. They failed to do so. The court specifically determined that issue against them. The findings in that regard are amply supported by the evidence.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.