[Civ. No. 4126.   Fourth Dist.   May 17, 1950.]

MILTON PIKE et al., Appellants, v. MARK HAYDEN et al., Respondents.

[Civ. No. 4127.   Fourth Dist.   May 17, 1950.]

MARK HAYDEN et al., Respondents, v. MILTON PIKE et al., Appellants.

Wilson & Wilson for Appellants.

Novack & Haberkorn for Respondents.

GRIFFIN, Acting P. J.—Appellants owned a 10-acre tract of land in Baker, bisected by U. S. Highway 91. A service station and café known as "Pike's Mobile Station and Café" occupies a portion of the property lying south of the highway. On April 29, 1947, appellants, under a written lease, leased the service station and café to one Cerny and wife for a three-year term. By the terms thereof the lessees were required to and did pay to appellants $600 as a last month's rental payment, and $2,000 as liquidated damages in the event of the breach of its provisions.

About September 15, 1948, some matrimonial differences arose between the Cernys and on that date appellants, the Cernys and respondents Hayden, met in an attorney's office for the purpose of arranging for the transfer by the Cernys to the Haydens of their interest in the service station and café. It was there orally agreed, by all present, that instead of assigning the Cerny lease to the Haydens (which had only two years to run), the Cerny lease should be cancelled and a new lease for the term of three years should be given by the Pikes to the Haydens and that the sum of $2,600, covering the guarantee and last month's rental deposit originally made by the Cernys with the lessors, should be held by the appellants for the benefit of respondents Hayden. It was then agreed that the Haydens would deposit $3,500 in escrow, $600 for the last month's rent, deposit of $2,000 advance guarantee, and $900 to cover purchase price of inventory of café which was to be subsequently taken.

Respondents' attorney was too busy to draw a lease in accordance with these arrangements on September 15, the day of this meeting. All parties insisted on some written agreement to this effect. As a result thereof, on that same day, a written agreement was signed by the Pikes and Haydens reciting in part as follows: "Whereas" appellants are owners of the station and café; Cerny and wife are now leasing it;

lessors and lessees have mutually agreed to cancel said lease; Haydens have agreed to purchase from Cernys the fixtures and stock of merchandise now owned by them; the Pikes "therefore . . . agree" to lease said station and café to the Haydens, "for the term of three years, under the same financial arrangements as now exist between the" Pikes, as owners, and the Cernys, as lessees, "as soon as the deal between" the Cernys and the Haydens ". . . is consummated." On September 15, 1948, the following note was written on one copy of the Cernys' lease: "By mutual consent of all parties hereto this lease is hereby cancelled as of the ―――― day of September, 1948." It was signed by the Pikes and by Mr. Cerny. Mrs. Cerny refused to sign until she was assured of her portion of the money to be received from the Haydens in consideration of the transfer. It was the testimony that the date of this cancellation was to be filled in as of the date when the Haydens went into possession and the Cernys left the premises. On September 18, the Cernys and the Haydens took inventory of the premises and on that same day the Haydens went into possession of the property and commenced payment to the appellants of $600 per month as rental, as provided in the Cerny lease. Haydens also paid a portion of the purchase price of the lease to Cernys, outside of escrow. On September 22 Cernys and Haydens went into escrow. Haydens deposited $3,500, covering the items previously mentioned. On September 23, Cernys admittedly received payment for the groceries and supplies in the café as established by the inventory. On September 20, appellants' attorney delivered two copies of the proposed new lease to the Pikes, but they did not inform respondents that such a lease had been prepared. The Haydens kept insisting that appellants obtain a written lease for them to sign. They continued to pay appellants $600 per month rental. It was not until early in February, 1949, that appellants showed respondents the proposed lease that was delivered to appellants by their attorney in September, 1948. At that time appellants presented to respondents the proposed lease and demanded that it be returned by February 5. That proposed lease thus presented contained many more onerous terms and conditions than those contained in the Cerny lease. Among them was a provision that in the event a certain contract between the lessees and the General Petroleum Corporation was cancelled for "any reason" or "without reason," said lease would be

cancelled and the lessees' $2,000 would be forfeited. There was likewise an additional provision for forfeiture of that sum in the event the premises should be destroyed by fire. There was testimony that the Haydens and the Pikes did agree upon certain changes that were to be made in some of the provisions of the proposed lease which provisions were not contained in the Cerny lease. On February 8, the appellants served upon the Haydens a 30-day notice in writing to quit, and on March 11, commenced an action in unlawful detainer against respondents to recover the service station and café. This action involves 4 Civil 4126 on this appeal. In this action the Haydens pleaded as an equitable defense the memorandum of September 15, 1948, alleged that they took possession of the property under said agreement; that they have paid plaintiffs the sum of $600 per month rent, and alleged that appellants orally agreed that the sum of $2,000 and the sum of $600 paid by the Cernys to plaintiffs under the terms of their written lease should be applied on the new lease to be executed; that respondents, relying upon their written and oral agreement, purchased the inventory and paid for the use of the café and gas service station; and alleged generally the facts above mentioned in connection with their agreement to execute the lease.

On May 11, the Haydens commenced an action against the Pikes to secure specific performance of the agreement which was pleaded in substantially the same form as the equitable defense in the unlawful detainer case which bears the number 4 Civil 4127 on this appeal. The two actions were consolidated for trial. The trial court denied recovery in the unlawful detainer action and in the specific performance action rendered judgment in favor of the Haydens and directed execution by the parties of a lease which was substantially in the same form as the Cerny lease. Judgment was entered accordingly. The Pikes have appealed.

■ Appellants' first contention in reference to the ejectment proceeding is that the evidence shows only a month to month tenancy; that respondents' only defense thereto is an equitable defense, is not one that equity would specifically enforce, and that since respondents did not show a superior right to possession they cannot successfully defend the action of plaintiffs, citing such cases as *Bruck* v. *Tucker,* 42 Cal. 346; *Bradbury* v. *Higginson,* 167 Cal. 553 [140 P. 254]; and *Swasey* v. *Adair,* 88 Cal. 179, 181 [25 P. 1119].

In the instant action appellants and respondents entered

into a written agreement by which it was then and there agreed between them that lessors would lease the premises for three years at the rate specified in the Cerny lease, as soon as the deal between the Cernys and the Haydens was consummated. Apparently the deal between them was consummated and to their entire satisfaction. The Haydens were given possession under this writing and they were not in default in any of their obligations. Appellants may not now successfully claim that such agreement was but a month to month tenancy.

In *Schubert* v. *Lowe,* 193 Cal. 291, 295 [223 P. 550], the court held that while the defendant was not entitled to a judgment decreeing specific performance of the agreement to execute the lease, nevertheless the part performance of such an agreement could be interposed as an equitable defense to plaintiff's attempt to wrest from them the possession of the premises by summary proceedings in unlawful detainer. (See, also, *Gray* v. *Maier & Zobelein Brewery,* 2 Cal.App. 653 [84 P. 280].) Likewise, in *Rishwain* v. *Smith,* 77 Cal.App. 2d 524 [175 P.2d 555], a factually similar question arose where a prior written agreement to lease was involved. The court stated, at page 531:

"That agreement was partly performed by the defendants' taking possession of the buildings and paying the stipulated rent. If a more formal lease was contemplated by the parties, as we think it was, the burden was on the plaintiffs to execute and present to the defendants such lease in substantial conformity with the expressed terms of the agreement. Plaintiffs failed to do so. They thereby breached their written agreement to lease the property. It follows that the defendants were not unlawfully withholding possession of the buildings, and the court properly determined that plaintiffs were entitled to recover nothing by their action . . . Under such circumstances it is immaterial that the defendants may not be entitled to specific performance of the agreement to lease in the unlawful detention proceeding."

█ It does not appear that the agreement of September 15 was contingent on the written cancellation by all the parties named in the Cerny lease. The conduct of the parties clearly supports the finding that a cancellation of that lease was effected. (*Baker* v. *Eilers Music Co.,* 26 Cal.App. 371, 374 [146 P. 1056]; *Welcome* v. *Hess,* 90 Cal. 507, 512 [27 P. 369, 25 Am.St.Rep. 145]; *Boswell* v. *Merrill,* 121 Cal.App. 476,

478 [9 P.2d 341]; *Rognier* v. *Harnett,* 45 Cal.App.2d 570, 574 [114 P.2d 654]; *State Guaranty Corp.* v. *Richardson,* 9 Cal.App.2d 287, 289 [49 P.2d 606].)

■ As to the judgment decreeing specific performance, appellants argue that the agreement between the parties was too uncertain to be susceptible of specific performance in that (1) the commencement of the term thereof is uncertain; (2) that the memorandum was uncertain with respect to the contents of the lease; (3) that the signed agreement lacks mutuality; (4) that it requires personal performance of personal services by the lessee; and (5) that the findings are not supported by the evidence in this respect. (Citing such cases as *Wineburgh* v. *Gay,* 27 Cal.App. 603 [150 P. 1003]; *Rohan* v. *Proctor,* 61 Cal.App. 447 [214 P. 986]; *Enlow* v. *Irwin,* 80 Cal.App. 98 [251 P. 658]; *Martin* v. *Hall,* 219 Cal. 334 [26 P.2d 288]; Civ. Code, § 3386; and *Moore* v. *Heron,* 108 Cal. App. 705 [292 P. 136].)

In none of the cases cited by appellants did the lessees have possession of the subject premises. Here, the lessees were let into possession by the lessors on September 18, the date agreed upon by the parties, and which was the date fixed by the court as the date of commencement of the lease. Respondents commenced paying rent as of that date. Appellants accepted these payments without objection over a period of months. There was sufficient certainty as to the date when the lease was to commence to support the court's finding.

Secondly, the written agreement contained all the necessary terms to make a valid lease. (*Losson* v. *Blodgett,* 1 Cal.App.2d 13 [36 P.2d 147].) In *Levin* v. *Saroff,* 54 Cal.App. 285 [201 P. 961], it is stated:

"To create a valid lease, but few points of mutual agreement are necessary: First, there must be a definite agreement as to the extent and boundary of the property leased; second, a definite and agreed term; and, third, a definite and agreed price of rental, and the time and manner of payment." (Citing cases.)

By reference, the agreement adopted the terms of the Cerny lease as to the "financial arrangements," which provisions were specific and certain. The description of the property was not fatally ambiguous or uncertain (*Beckett* v. *City of Paris Dry Goods Co.,* 14 Cal.2d 633, 637 [96 P.2d 122]; *Guttman* v. *Berry,* 83 Cal.App.2d 507, 510 [189 P.2d 41].) If there were to be other and added provisions in an additional lease to be subsequently prepared, the question of its terms

and conditions, as agreed upon by the parties, was a factual question for the trial court to determine. The agreement was prepared by appellants' attorney. In case of uncertainty the agreement must be interpreted most strongly against the party who caused the uncertainty to exist. (Civ. Code, § 1654.)

■ Third, the instrument is not lacking in mutuality. The Haydens signed the agreement and lease, took possession of the property, paid the rental prescribed, have performed all the obligations imposed by such agreement and have demanded the execution of a more formal agreement which appellants failed to furnish.

In commenting on section 3386 of the Civil Code, the section relied upon by appellants, in *Miller* v. *Dyer,* 20 Cal.2d 526, 530 [127 P.2d 901, 141 A.L.R. 1428], the court said the rule was never considered applicable where the unavailability of the remedy to the party against whom relief was sought resulted from his own default, citing cases. Thus, it is evident that if there is any lack of mutuality of remedy, such lack was brought about by the appellants' refusal to give the respondents the lease they had requested, containing the terms upon which both parties had agreed. Under *Allen* v. *Dailey,* 92 Cal.App. 308 [268 P. 404], appellants are precluded from enforcing this claim.

■ Under the fourth contention appellants argue that since the lease requires that the lessees shall keep the station "open to the public for twenty-four hours a day" and conduct all "business here under lease" in an efficient manner, etc., such provisions require the personal services of the lessees. These provisions are not unusual to such leases and do not constitute a contract of employment. The lease does not require the performance of personal service. (*Harms* v. *Reed,* 73 Cal.App.2d 853, 862 [167 P.2d 747]; *George* v. *Weston,* 26 Cal.App.2d 256, 266 [79 P.2d 110].)

Lastly, the terms of the lease ordered executed follow closely the terms of the Cerny lease. The only variances do not materially affect or prejudice appellants' rights. The evidence fully supports the findings and judgments entered.

Judgments affirmed.

Mussell, J., and Shepard, J., pro tem., concurred.

A petition for a rehearing was denied June 5, 1950, and appellants' petition for a hearing by the Supreme Court was denied July 13, 1950. Schauer, J., voted for a hearing.