WEST TEXAS BANK & TRUST CO. v.
MATLOCK et al. (No. 61–2790.)

(Commission of Appeals of Texas, Section A.
June 11, 1919.)

1. PERPETUITIES ☞4(1)—WHAT CONSTITUTES.

A perpetuity is a limitation of property taking the 'subject thereof out of commerce for a longer period than a life or lives in being and 21 years thereafter (citing Words and Phrases, Perpetuity).

2. PERPETUITIES ☞7(1)—DEPOSIT TO BE PAID ON CONTINGENCY—LIMITATION OF TIME FOR PERFORMANCE.

Where a vendor of land which was divided into many lots and farms agreed to pay $50,000 bonus to the first railroad that should come through the land, and to deposit the bonus with trustees, held that when the funds were delivered to trustees it was proper for the vendor to insist that the trustees' bond should provide for return of the money within a reasonable time if no railroad was constructed, for if such provision were not incorporated in the agreement, the trust would be invalid under Const. art. 1, § 26, as creating a perpetuity. .

3. TRUSTS ☞61(4)—AGREEMENT—CONSTRUCTION. .

Where a vendor of large parcel of land which was subdivided into lots and farms agreed to deposit $50,000 ·with trustees to be paid by them as a bonus to the first railroad constructing line through the property, held that the vendor was entitled to have the fund revert to him if the trust should terminate within a reasonable time without attainment of object.

4. TRUSTS ☞153—INTEREST ON FUND.

Where a vendor of land which was subdivided into many different parcels agreed to deposit $50,000 with trustees to 'be paid as bonus to the first railroad coming through the land, held that under the agreement the vendor or his heirs were entitled to the interest on the fund during the time it was held by the trustees, before a railroad was constructed.

5. TRUSTS ☞227—COUNSEL FEES—RIGHT TO.

Trustees should be allowed to pay out of trust fund expenses of litigation concerning such fund in event the litigation is forced on them; hence trustees of fund, deposited by vendor of large parcel of land to hold as a bonus to first railroad coming through, are entitled to pay attorney's fees out of trust fund, where it was sought by the executor of the vendor to recover the fund.

6. TRUSTS ☞227—ATTORNEY'S FEES—BENEFICIARIES.

Where vendor of land deposited $50,000 with trustees to be paid as a bonus to the first railroad coming through the land, held that, where the executors of vendor sought to recover the amount on the theory that a reasonable time had expired without the construction of a railroad, purchasers who because of their interest intervened are not entitled to have allowed attorney's fees out of the corpus of trust fund because the trustees represented them and persons similarly situated.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by the West Texas Bank & Trust Company, executor, against A. L. Matlock and others, trustees, in which Walter Brown and others intervened. Judgment for defendants was affirmed by the Court of Civil Appeals (172 S. W. 162), and plaintiff brings error. Judgment reformed and affirmed.

McFarland & Lewright and W. H. Kennon, all of San Antonio, for plaintiff in error.

Butler L. Knight and A. L. Matlock, both of San Antonio, for defendants in error.

TAYLOR, J. The plaintiff, West Texas Bank & Trust Company, as executor of the last will and testament of Dr. C. F. Simmons, deceased, instituted this suit against the defendants, A. L. Matlock, A. M. Avant, and A. W. Eastman (who died prior to the trial below), to recover from them, as trustees a trust fund of $50,000. Walter Brown and nine others, acting for themselves and all others similarly situated, intervened.

The cause was submitted to the jury upon one special issue of fact; and upon the answer to that issue, together with other facts found by the court, judgment was rendered for the defendant trustees and interveners. The Court of Civil Appeals affirmed the judgment of the trial court. 172 S. W. 162.

Dr. Simmons was the owner of 60,000 acres of land in Live Oak county, Tex. On the 4th day of June, 1906, he conveyed the said land to J. P. Barclay, R. L. Ball, and E. P. Simmons, in trust, to convey to prospective purchasers in compliance with a certain plan of distribution theretofore devised and set forth in 22 rules hereafter referred to. The land, in accordance with the provisions of said rules, was laid out into a certain town site containing 4,200 lots, later designated as Simmons City, and 4,205 farm tracts, as provided for in the plan of distribution.

Dr. Simmons, through his agents, sold, for a consideration of $120 each, applications to purchase to about 4,100 persons, residing in different parts of the United States. The applicants prior to September 9, 1907, paid for their respective applications, and thereby became entitled each to a lot and farm. .

On the 24th day of July, 1906, Dr. Simmons entered into a trust agreement with the said Barclay, Ball, and Simmons, as trustees, under the terms of which the accumulation of a fund of $50,000 was provided for, known as a "Railroad Bonus Fund." The agreement required the said trustees to hold the fund so accumulated in trust, to be paid over in compliance with the requirements of said rules, particularly rule 22; that is to say, if any railroad having an eastern or northern connection should build and operate a railroad through said tract of land and town site, in accordance with the conditions laid down in said booklet, the trustees were authorized to pay over the bonus to the railroad company. The agreement provided that if a railroad should be completed and in operation before the time for the distribution of the lots and farms, the money should be paid to the railroad company on the day of distribution, but if no railroad was completed through the town site prior to such time, then the said trustees were authorized to turn over the $50,000 to three trustees to be selected as provided in rule 9.

The agreement further provided that said bonus should be turned over to the trustees selected only on the execution and delivery by them, within one year from the date of distribution, of a bond payable to Dr. Simmons, his heirs or assigns, conditioned that said trustees should hold the fund, in trust, to pay to any railroad company that should build and operate a railroad through said town site within a reasonable time.

The agreement was conditioned also that if no railroad was so built and operated within a reasonable time, then said $50,000 should revert to Dr. Simmons, his heirs or assigns, and stipulated further that the trustees, during the time they were authorized to hold said fund, should place the same at interest, to be paid annually to the said Simmons, or his estate.

At the time of the distribution September 9, 1907, no railroad had been built to the town site. On that occasion A. L. Matlock, A. M. Avant, and A. W. Eastman were duly selected as trustees. It was agreed between them, Dr. Simmons, and the purchasers, that they, as trustees, should give a bond for the protection of the purchasers on the delivery of the bonus, but neither the trustees nor the purchasers then knew that the foregoing stipulations, relating to the building of the railroad within a reasonable time, the payment of interest, and the reversion of the fund, would be incorporated in the bond. The said Matlock, Avant, and Eastman, on learning that the fund would be turned over to them only on the conditions stated, and being desirous of securing possession thereof, and of preventing a reverter within the year to Dr. Simmons, executed the bond conditioned as required, and the sum of $50,000 was paid over to them by the said Barclay, Ball, and Simmons, to be held and administered as stipulated in the bond.

The booklet referred to, Home Sweet Home, is a part of each purchaser's application to buy a lot and farm. It is vividly, and we may say, aptly, described by Chief Justice Fly in the opinion of the Court of Civil Appeals as a rose-colored pamphlet issued under an alluring title. It is indeed calculated to arouse by its songs, not only the sentiments of the lovers of homes, but their religious feelings as well. It contains, in addition to songs and customary prospectus inducements, a comparison between the productivity of said 60,000-acre tract and Texas lands generally with that of lands in other states, which is no wise unfavorable to the lands in the vicinity of Simmons City. Its relevancy, however, is due to the fact that it contains the rules above referred to, particularly rules numbered 9 and 22. Those rules relate to many irrelevant matters, such as the establishment and naming of the town site, the numbering, description, and distribution of the lots and farms, the plan of making payments therefor, etc. Rules 9 and 22, however, are vital to a determination of the issues involved, and will be later set out in full.

The plaintiff declares upon the bond executed by the defendant trustees. Recovery of the bonus fund is prayed for under the allegation that a reasonable time for the building of the railroad has expired, and that the failure to construct a railroad within such time has terminated the trust.

The surviving trustees deny that a reasonable time has expired for the accomplishment of the purpose of the trust, and assert that they would not have executed the bond sued on, except that they could not otherwise get possession of the fund, and did not desire to jeopardize the interests of the purchasers by permitting the bonus to revert. The foregoing pleadings of the defendant trustees, as briefly above stated, include, in view of the evidence adduced, all of their material allegations, except those made the basis of a recovery of attorney's fees. They ask the court to construe the contracts to purchase, of which rule 22 was a vital part, and to establish, define, and declare the rights of the parties at interest thereunder, and to declare their duties as trustees, under the trust.

The intervening purchasers resisted the action upon practically the same grounds as those urged by the trustees, and asserted an interest, not only in having the trust administered under the provisions of rule 22, but a vested interest in the trust fund itself, and prayed that the court so declare. They allege further that the bond is void for the reason that the provisions relating to a reversion of the fund, the payment of interest, and the building of a railroad within a reasonable time, were made without their knowledge or

consent, and are less advantageous to them than the terms imposed under their applications to purchase, as provided in rule 22; that their rights under the trust should be ascertained from their respective purchase contracts, and particularly by reference to the rule. The interveners prayed also that a fee be paid the attorney representing them, and that they recover $4,000 interest theretofore paid the Simmons estate by the defendant trustees.

The court submitted only the issue of reasonable time, and the jury found in answer thereto that a reasonable time had not expired for the building of a railroad to the town site. The court made further findings of fact substantially in accordance with the pleadings of the trustees and purchasers as above stated, and made in substance the following conclusions of law:

(a) That the interveners and other purchasers similarly situated have a vested interest in said $50,000 fund and the uncollected interest thereon from September 8, 1908. (b) That said interveners and purchasers have such equitable rights in and to said trust fund as to preclude plaintiff in error from recovering the same regardless of whether a reasonable time has expired for the construction of the railroad. (c) That the said $50,000, together with all accrued uncollected interest thereon, when collected, is a trust fund in the hands of the defendants for the benefit of the interveners and those similarly situated. (d) That the sum of $2,000 be paid, as attorney's fees; $1,000 to A. L. Matlock, one of the attorneys for the defendant trustees, and $1,000 to the attorney representing the intervening purchasers. (e) That the defendant trustees are estopped from contending that the payment of $4,000 of accrued interest to the Simmons estate was illegal or wrongful, inasmuch as the same is in accordance with the provisions of their bond as trustees.

[1, 2] That part of the decree based on the finding of the jury correctly denies to the plaintiff recovery of the fund sued for. The further provisions of the decree are in accordance with the foregoing conclusions of law, and deny plaintiff any right, title, or interest of any character in and to said fund, either absolute or reversionary.

No complaint is made that Dr. Simmons has failed to do any of the things required to be performed by him under the provisions of the booklet and the rules incorporated therein. The land was platted, sold and distributed in accordance with the plan therein set forth. The trustees were selected as provided in rule 9. The required sum was turned over to the trustees so selected to be held by them in trust to pay over on the contingency stated in rule 22, and is still in their custody for such purpose.

The first question presented is whether the rights of the parties should be ascertained under the provisions of rules 9 and 22, or the bond sued upon, or both.

The rules referred to are as follows:

9. In order that each applicant will know that their interest is fairly represented in the distribution, the applicants, by their representatives, when they assemble to make the distribution, will elect three trustees from their number, to whom owner will convey this town site and farm property by warranty deeds; except the town reservations and except the reservations for public roads, churches and school purposes and railroads, and will furnish said trustees complete abstract of title, with the opinion of three eminent attorneys, showing the title good and clear of incumbrance, together wtih blank deeds for the trustees to distribute among the purchasers.

22. One of the proposed railroads through this property already has 10 miles graded, and owner has agreed to pay $50,000.00 bonus for the first railroad to come through this land down the river on the side of the new town and through it. This bonus, owner hereby contracts to pay when road located as above is running passenger trains, provided the road is running passenger trains before the day of farm and lot distribution, but, if no railroad located as above is running trains on the day of distribution, then owner hereby guarantees that he will on that day turn over to the three trustees, in trust, fifty thousand dollars in gold, to be by said trustees given as a bonus to the first railroad having an eastern or northern connection, which runs passenger trains through this property on line above indicated. This bonus guarantees to each purchaser, free of cost, the first railroad just where it should be, and it will doubtless make a race between the railroads to get there first.

Rule 22 does not purport to be a trust agreement. By its terms the owner contracts either to pay to a railroad on the day of distribution on the conditions named the sum specified, or, in the event the conditions have not on that day been met, to pay over to trustees, in trust, the said sum. In other words, the owner by the language of the rule contracts to create a trust for the accomplishment of the object therein stated. Clearly in the performance of his contract obligation, as set forth in the rule, the settlor not only had the right, but owed to the purchasers the legal duty, to create a valid trust for the purpose of inducing a railway company to build its line of railroad to the town site. Whether the purchasers contemplated the execution of a bond conditioned that the trust fund should revert to Dr. Simmons in the event the purpose of the trust should not be accomplished within a reasonable time is immaterial, if their rights are not affected by such condition.

The bond, being intended to secure the performance of the duties of the trustees, more minutely defines such duties than the provisions of the rule, and its conditions do no violence to such provisions. If the rule and

bond jointly contain the terms of a trust as proposed and guaranteed by the rule, neither the executor of the estate of the settlor nor the purchasers should be heard to say that either is void. One who has contracted as a settlor to create a private contingent trust for the accomplishment of the object stated has no authority to impose conditions upon the trustees affecting adversely the interests of the other contracting parties, or at variance with the contract terms; but such settlor has the right to require of the trustees such reasonable safeguards, within the limits stated, as are essential to the security of the trust fund and a due administration of the trust. The bond executed by the trustees in this case serves no other purpose, and Dr. Simmons was within his right in requiring it. Certainly, in the absence of an express inhibition in the applications to purchase, the purchasers have no ground to complain of the "reasonable time" provision of the bond, if without this provision the trust agreement is void.

What then would be the effect of the omission of such provision from the conditions of the bond?

Article 1, § 26, of the state Constitution provides that "perpetuities and monopolies * * * shall never be allowed."

A perpetuity is a limitation of property, taking the subject thereof out of commerce for a longer period of time than a life or lives in being and 21 years thereafter. Words and Phrases, vol. 6, p. 5319; Purvis v. Sherrod, 12 Tex. 140; McIlvain v. Hockaday, 36 Tex. Civ. App. 1, 81 S. W. 54. Gray on Perpetuities (3d Ed.) p. 252, says:

"The tying up of property was attempted in two ways, first, by making vested estates inalienable, and, when the judges stopped this, then by the creation of indestructible future contingent estates; and to restrain these last the rule against perpetuities was devised."

The same author (page 174) states the rule as follows:

"No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."

The rule is not applicable to charitable trusts, but to trusts for private purposes, (R. C. L. vol. 21, p. 306) and to contracts (Id. p. 303; Gray on Perp. p. 308). "When an estate is given to trustees, but it is possible that no equitable interest under it may arise within the limits of the rule, the whole trust is bad, * * * as when property is given upon trusts to arise when a gravel pit was worked out, or upon trusts to arise when a parcel of land could be sold at a certain price." Id. p. 361.

It is apparent that if rule 22 alone is looked to as expressly stipulating in detail all of the terms of the trust, the agreement is invalid, in that it is possible that the railroad may not be built, if at all, until after the expiration of the time allowed under the rule of perpetuities. The only provision of the bond affecting the interests of the purchasers, not expressly stated in the rule, is that the contingency in which the trustees are to pay over the fund must happen within a reasonable time. If the bond prescribing the limitation stated is void, then the trust agreement, lacking such limitation, offends against the rule, and is likewise void.

It is urged that under the terms of rule 22 the purchasers have a vested interest in the bonus fund itself, and that the agreement is therefore not within the rule of perpetuities.

[3] The only obligation guaranteed to be performed under the stipulations of rule 22 is that the owner (Dr. Simmons) will, at the time stated, turn over to three trustees, in trust, the said bonus fund to be paid over by them on the contingency and in the manner stated. The conveyance was under a clear limitation by apt words that the fund be held in trust. It is not stated in the rule, nor is it implied, that in the event no railroad fulfills the conditions imposed, the fund will be turned over to the purchasers as a gift. The trustees are given no authority to make an absolute conveyance of the fund to any one other than a railroad company, and their authority to pay it over under any circumstances is contingent. Under no condition, expressed or implied, is the fund to become vested in the purchasers. The greatest and only benefit that could accrue to them in the event of the accomplishment of the object of the trust, or in any event, is such increase in the value of their lands as would result from the building of a railroad as contemplated. Their interest is not in the fund itself, but in its due administration in accordance with the trust declaration. There is no implication of law that arises whereby any other or greater interest in the fund is divested out of Dr. Simmons than that with which the purchasers are invested. All interest therein is to be conveyed to the railroad company, and not to the purchasers, and to the company only upon the happening of the contingency stated. The reversionary interest in the trust fund, not being divested out of the owner under its terms, remains in him, his heirs and assigns, so long as the trust continues. If the trust terminates without the attainment of the ultimate object thereof, the bonus fund reverts to Dr. Simmons, his heirs and assigns. 39 Cyc. p. 109, subd. (f); Id. p. 213, subd. (b); Id. p. 437, subd. (b).

The next question arises by virtue of the interest earnings on the fund. To whom are they payable?

[4] The bond provides the interest shall be paid annually to Dr. Simmons, his heirs or assigns, and does not contravene the contract provisions of rule 22. It appearing that the corpus of the fund only can be applied to the

purposes of the trust, no one other than the settlor, or his legal representatives, regardless of the provisions of the bond, has any rights growing out of the interest accumulations. The stipulation is to pay the cestui que trust the sum of $50,000, and no authority is conferred for the payment under any circumstances of a greater sum. The rights of the purchasers are therefore not affected by that provision of the bond relating to the payment of interest. The conclusion of the Court of Civil Appeals that the trustees should be denied a recovery of the sum of $4,000 interest on said fund collected by the Simmons estate is correct. The said estate is, in our opinion, entitled to receive, not only the said $4,000, but also the entire interest earnings of the fund, to be paid as stipulated in the bond.

The remaining question is whether the attorney representing the purchasers should recover attorney's fees.

[5] We concur in the holding of the Court of Civil Appeals in affirming that part of the judgment allowing a fee out of the corpus of the bonus fund to the attorney representing the trustees. It is well settled that trustees should be allowed to pay out of the trust fund all expenses of litigation concerning such fund, in the event the litigation is forced upon them. Perry on Trusts, vol. 2, § 910. It is usual to allow a reasonable compensation to trustees for extraordinary services, for the performance of which they would have the right to employ another person. The rule should not be otherwise merely because one of the trustees is an attorney and accepts employment from his associates in such capacity to render necessary legal services. Turnbull v. Pomeroy, 140 Mass. 117, 3 N. E. 15.

[6] We see no reason for the allowance of a fee to the attorney representing the interveners and those similarly situated. Their interest in the trust is in its due administration only. The trustees are charged with and are engaged in the performance of the administrative duties, and their attorney alone should be compensated.

We are of the opinion, therefore, that the judgments of the trial court and the Court of Civil Appeals should be so reformed as to: (a) Establish plaintiff's right, title, and interest in and to the reversionary interest in said trust fund, and declare its right to recover the same on the termination or dissolution of the trust, after the expiration of a reasonable time for the accomplishment of its object; (b) establish plaintiff's right to all interest accrued and to accrue in said fund, and declare its right to collect the same, as provided in said bond; and (c) deny payment of attorney's fees for services rendered on behalf of the intervening purchasers; and that, as reformed, said judgments should be affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission on the questions discussed.