[S. F. No. 21344. In Bank. Nov. 21, 1963.]

ELI M. WONG et al., Plaintiffs, Cross-defendants and Appellants, v. LORIS M. DI GRAZIA et al., Defendants, Cross-complainants and Appellants.

Charles F. Wong for Plaintiffs, Cross-defendants and Appellants.

Theodore M. Monell for Defendants, Cross-complainants and Appellants.

TOBRINER, J.—We hold here that an agreement which provided that the lease of a building to commence "upon completion of said building" does not violate the rule

against perpetuities. (Civ. Code, § 715.2.)[1] The nature of the circumstances of the transaction shows that the contemplated building was to be completed within a reasonable time and that such reasonable time was less than 21 years. Hence the interest would either vest or fail within the statutory period. As to the remaining issues upon appeal we believe the trial court property held that the duty of installation of a sprinkler system fell upon the lessees and that their refusal to perform that obligation constituted a breach. We therefore affirm the judgment in favor of the lessors except as to a minor matter of damages awarded them, which we remand to the trial court for clarification.

The factual background which produced this action is neither complicated nor disputed. On July 11, 1958, plaintiffs and defendants entered into a written agreement in which defendants agreed to lease to plaintiffs for a period of 10 years a building to be constructed by defendants. The contract required defendants to construct only the shell of the building, exclusive of toilet facilities, lighting installations, and other improvements.

Paragraph 27 of the agreement provided: "Lessor [defendants] shall forthwith commence the construction of a building upon the herein demised premises, in accordance with plans and specifications noted thereon, a copy of which is attached hereto and made a part hereof. ... Said plans and specifications are complete, and the Lessor shall not be required to provide or pay for any additional construction. ... Construction shall commence forthwith upon approval of completed plans and specifications and shall continue expeditiously until said building is completed, subject to material and/or labor shortages, strikes, lockouts, governmental actions and all causes beyond the control of Lessor. Said building shall be completed within ninety (90) days after a building permit has been secured from the City and County of San Francisco of said plans and specifications, subject to the contingencies above mentioned, and Lessee shall not delay

---

[1]Section 715.2 states: "No interest in real or personal property shall be good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest and any period of gestation involved in the situation to which the limitation applies. The lives selected to govern the time of vesting must not be so numerous or so situated that evidence of their deaths is likely to be unreasonably difficult to obtain. It is intended by the enactment of this section to make effective in this State the American common-law rule against perpetuities."

or impede said construction by making changes or alterations therein, it being understood that the time consumed in effecting any such changes shall be added to the time for the completion of said building. . . . Upon completion of said building ... Lessor shall forthwith cause a Notice of Completion to be recorded, and the term of this lease shall commence upon the recording of said Notice of Completion. ..."

Plaintiffs paid $7,875 to defendants as an advance rental payment upon the execution of the lease. Later plaintiffs learned that the San Francisco building code required as a prerequisite to issuance of a building permit the installation of a sprinkler system costing approximately $9,500. Plaintiffs insisted that defendants pay the cost of this sprinkler system; defendants refused, contending that plaintiffs should bear this burden.

After fruitless negotiations between the parties, plaintiffs notified defendants that their refusal to proceed with the installation of the system and construction of the building effected a breach of the agreement. Plaintiffs then filed a complaint seeking rescission and the return of the $7,875 paid to defendants. Defendants cross-complained, alleging plaintiffs' breach. After a trial without a jury, the court rendered judgment for defendants, awarding them damages on the cross-complaint of $9,500.14 plus counsel fees of $1,250. The court credited plaintiffs with the $7,875 deposit, fixing the net amount owed under the judgment as $2,875.14 Both parties appealed.

The case raises as its major issue the validity of the agreement under the rule against perpetuities. If the agreement survives this attack, we must determine if the court properly held plaintiffs liable for its breach and correctly fixed damages.

Turning to the first point, we note that in an "on completion" lease, such as the present agreement, the question of the application of the rule arises from the fact that the lease term commences upon completion of the building, an event expected to occur in the near future but subject to delay from various contingencies. If the lease were construed to postpone the "vesting" of the lessee's interest until such commencement of the term, vesting might possibly be delayed longer than 21 years from the execution of the lease, thus purportedly rendering the lease invalid under the rule against perpetuities.

Since "on completion" leases represent a relatively new

commercial development, the question of their validity has been raised, so far as we have found, in only five cases. Two cases, *Haggerty* v. *City of Oakland* (1958) 161 Cal.App.2d 407 [326 P.2d 957], and *Southern Airways Co.* v. *De Kalb County* (1960) 101 Ga.App. 689 [115 S.E.2d 207], have held such leases to be in violation of the rule against perpetuities; the latter case, however, was reversed upon the ground that the agreement did not constitute a lease but a management contract. (*Southern Airways Co.* v. *De Kalb County* (1960) 216 Ga. 358 [116 S.E. 2d 602].) Three cases, *Isen* v. *Giant Food, Inc.* (D.C. Cir. 1961) 295 F.2d 136, *City of Santa Cruz* v. *MacGregor* (1960) 178 Cal.App.2d 45 [2 Cal.Rptr. 727], and *Halifax* v. *Vaughn Constr. Co.* (Sup.Ct. Nova Scotia, 1957) 9 D.L.R.2d 431, rev. on other grounds (Sup.Ct. Nova Scotia, in bank, 1958) 12 D.L.R.2d 159, have upheld such leases but advanced somewhat different reasons for doing so.[2]

The rule has been the subject of great debate among scholars and writers; some have suggested basic changes in its application.[3] The rule has also been subjected in some states to sweeping statutory reform.[4] As we point out *infra*, it has

---

[2]*Isen* v. *Giant Food, Inc.*, applying Virginia law, held that the lease gave the lessee a present vested interest in a future right of possession, and thus did not violate the rule against perpetuities. (295 F.2d at p. 138, *supra;* see opinion, *infra*, at p. 534. *City of Santa Cruz* v. *MacGregor* involved a case in which the building had already been completed. The court relied upon this fact to distinguish *Haggerty*, stating that ''Here the agreement has been executed in part by the completion of the building by the Gibsons and the taking of possession under the agreement by Silvanes. This eliminated the sole ground upon which the *Haggerty* case is based, that the proposed building might never be built.'' (178 Cal.App.2d at p. 54.) *Halifax* v. *Vaughn Constr. Co.* construed the lease to require performance within a reasonable time and held that a reasonable time was necessarily less than 21 years.

[3]In addition to those approaches to the problem of ''on completion'' leases discussed in the opinion, a number of more sweeping reforms have been suggested, such as the ''wait and see'' doctrine, the extension of *cy pres* to noncharitable interests, the establishment of presumptions that so-called ''administrative contingencies'' will occur within 21 years, and the limitation of the rule against perpetuities to non-commercial matters. For a summary and analysis of these reform proposals, see A.B.A. Section on Real Property, Probate & Trust Law, Perpetuities Legislation Handbook (2d ed. 1962) and authorities there cited. We do not intend, by this opinion, to imply disapproval of such reform proposals, but only to conclude that, as far as ''on completion'' leases are concerned, a reasonable application of the traditional rule against perpetuities will render satisfactory results.

[4]See e.g., Idaho Code (1957) section 55-111: ''... there shall be no presumption that a person is capable of having children at any stage of

been corroded by many exceptions.[5] Learned writers have questioned whether the concepts of vested and contingent

adult life''; Ill. Ann. Stats. (Smith-Hurd, 1962 Supp.) chapter 30, section 153(a): ''The vesting of any limitation of property ... shall not be regarded as deferred for purposes of the rule against perpetuities merely because the limitation is ... to take effect on the probate of a will''; Mass. Ann. Laws (1955) chapter 184A, section 1: ''In applying the rule against perpetuities ... the validity of the interest shall be determined on the basis of facts existing at the termination of such ... life estates or lives''; and section 2: ''If an interest ... would violate the rule ... because such interest is contingent upon any person attaining ... an age in excess of twenty-one, the age contingency shall be reduced to twenty-one ...''; Pa. Stats. Ann. (Purdon 1950) title 20, section 301.4(b): ''Upon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events any interest not then vested ... shall be void''; Vt. Stats. Ann. (1959) title 27, section 501: ''Any interest ... which would violate the rule against perpetuities shall be reformed, within the limits of that rule, to approximate most closely the intention of the creator of that interest. ...'' See generally A.B.A. Perpetuities Legislation Handbook, *supra*, fn. 3, at pp. 10-30; Lynn, *Reforming the Common Law Rule Against Perpetuities* (1961) U.Chi.L.Rev. 488.

The Legislature in 1963 added the following provisions to the Civil Code which, although they do not apply to the instant case, disclose a legislative intent that section 715.2 be liberally construed:

Section 715.5: ''No interest in real or personal property is either void or voidable as in violation of section 715.2 of this code if and to the extent that it can be reformed or construed within the limits of that section to give effect to the general intent of the creator of the interest whenever that general intent can be ascertained. This section shall be liberally construed and applied to validate such interest to the fullest extent consistent with such ascertained intent.''

Section 715.6: ''No interest in real or personal property which must vest, if at all, not later than 60 years, after the creation of the interest violates section 715.2 of this code.''

Section 715.7: ''In determining the validity of a future interest in real or personal property pursuant to section 715.2 of this code, an individual described as the spouse of a person in being at the commencement of a perpetuities period shall be deemed a 'life in being' at such time whether or not the individual so described was then in being.''

Section 715.8: ''An interest in real or personal property, legal or equitable, is vested if and when there is a person in being who could convey or there are persons in being, irrespective of the nature of their respective interests, who together could convey a fee simple title thereto.

''An interest is not invalid, either in whole or in part, merely because the duration of the interest may exceed the time within which future interests in property must vest under this title, if the interest must vest, if at all, within such time.''

[5]See fn. 19, *infra.*

interests may properly be applied to leases at all.[6] The majority have affirmed the legality of "on completion" leases under the rule.[7]

Many factors militate against a rigid mechanistic operation of the rule in the present case. Thus in drafting the lease the parties themselves did not anticipate the application of the rule; otherwise they would have avoided its impact by formalistic provision.[8] Indeed, the attention of the parties and their attorneys to its possible application was first drawn at the *appellate* level by the District Court of Appeal.[9] A noted authority in this field of law has pointed out that ". . . the esoteric learning of the Rule against perpetuities is, apart from dim memories from student days, a monopoly of lawyers who deal in trusts and estates. Those members of the bar who specialize in corporate matters, including commercial leases, are not intimately familiar with it or alerted to its caprices." (Leach, *Perpetuities: New Absurdity, Judicial and Statutory Correctives* (1960) 73 Harv.L.Rev. 1318, 1322.) Even in the subject matter of estates this court has recognized the excusable failure of an attorney to comprehend all of its ramifications.[10]

---

[6]See 3 Simes & Smith, Future Interests (2d ed. 1956) § 1242; 37 Notre Dame Law. (1962) 561, 564-565.

[7]See Leach, *Perpetuities: New Absurdity, Judicial & Statutory Correctives* (1960) 73 Harv. L. Rev. 1318; (1959) 47 Cal.L.Rev. 197; (1959) 10 Hastings L.J. 439; (1962) 37 Notre Dame Law. 561; (1959) 6 U.C.L.A. L. Rev. 165; Note 66 A.L.R.2d 733, 738-739. But see Jones, *The Rule Against Perpetuities As It Affects California Oil and Gas Interests* (1960) 7 U.C.L.A. L. Rev. 261, 278; (1960) 39 N.C. L. Rev. 93; (1959) 35 N.D.L.Rev. 170; see also (1962) 19 Wash. & Lee L. Rev. 91.

[8]The parties could simply have provided that the lessee's term would commence on filing of the notice of completion, "but not later than twenty-one years from the date of this agreement." If more time were desired, the parties could specify, for example, "twenty-one years after the death of the survivor of X, Y, and Z," these being healthy infants living at the time of the agreement. See Nelson, Financing Commercial Real Estate, in California Land Security & Development (Cont. Ed. Bar 1960) 513, 532-533.

[9]The rule against perpetuities issue was first brought to the attention of the parties by a question during the oral argument before the District Court of Appeal. (See *Wong* v. *Di Grazia* (Cal.App.) 29 Cal.Rptr. 86, 88.) Defendants contend that the issue not having been raised at trial, it was improper for the District Court of Appeal, and would be improper for this court, to adjudicate that issue. We doubt the validity of this contention; in any event, the issue as to the rule against perpetuities of is considerable public interest; it has been fully argued before this court; we, accordingly, dispose of the issue on its merits.

[10]*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 592-593 [15 Cal.Rptr. 821, 364 P.2d 685].

Unless the precedents compel a rigid application of the rule to the instant facts, these considerations proscribe its unexpected operation here. To determine if we must apply the rule to the instant lease, we briefly examine the history of the rule, its pertinence to the general field of commercial transactions involving leaseholds and its specific relevance to the facts of this case.

The rule against perpetuities originated as a rule of property law during the mercantilistic period of English history. Thus the "celebrated decision which marks the beginning of the modern rule against perpetuities," The Duke of Norfolk's Case, was decided in 1682. (3 Simes & Smith, The Law of Future Interests (2d ed. 1956) § 1211 at p. 91.) The social order of 1682 demanded as to its property transactions certainty in title and fixation of ownership; the idea of titles which had not vested or ownership which remained inchoate was necessarily anathema. Indeed, the basic purpose of the rule was to limit family dispositions, and in that context the period of lives in being plus 21 years served as a proper measurement. Only later by an overextension of nineteenth century concepts did the courts apply the rule to commercial transactions. (See Leach, *Perpetuities: New Absurdity, Judicial and Statutory Correctives* (1960) 73 Harv.L.Rev. at p. 1322.)

Rules which bear such birthmarks assume a different aspect when they are applied to contracts or leases in a modern society whose economic structure rests upon planning for the future and whose life blood is credit. Since the rule against perpetuities was born in a society which extolled the tight ownership of inherited real property, it does not facilely operate as to commercial agreements in today's dynamic economy. "The period of lives in being and 21 years, which works admirably with regard to gift transactions for family purposes, has no significance in the world of commercial affairs." (Leach, *Perpetuities in a Nutshell* (1938) 51 Harv. L.Rev. 638.)

Certainly our function is not to interpret the rule so as to create commercial anomalies. A lease to commence upon completion of the leased building is a common business arrangement.[11] Such a clause is a standard provision of leases in shopping centers, which have been and are being constructed

---

[11]Nelson, *supra* note 8, at p. 532.

throughout the country;[12] the parties to such transactions do not suspect that the rule will be extended to invalidate their agreements; even the attorneys who draw the leases may excusably not anticipate such application. Surely the courts do not seek to invalidate bona fide transactions by the imported application of esoteric legalisms. Our task is not to block the business pathway but to clear it, defining it by guideposts that are reasonably to be expected. As was pointed out in (1959) 47 Cal.L.Rev. 197, 200: "[A] strict and literal application of the Rule Against Perpetuities to a lease of this nature can do little to serve the basic purpose behind the rule and can result only in placing an unnecessary burden on the parties to an accepted commercial transaction." We therefore do not propose to apply the rule in the rigid or remorseless manner[13] characterized by some past decisions; instead we shall seek to interpret it reasonably, in the light of its objectives and the economic conditions of modern society.

We turn to the specific relevance of the rule to the facts of this case. We could conceivably construe the instant transaction as one which creates a vested interest in a future term and invoke the principle that agreements which establish vested future interests escape the rule, despite the uncertainty or remoteness of the commencement of the term (see e.g., *Francis* v. *Superior Oil Co.* (10th Cir. 1939) 102 F.2d 732; Note (1959) 66 A.L.R.2d 733.) Indeed this technique for saving "on completion" leases was utilized in *Isen* v. *Giant Food, Inc., supra* (D.C. Cir. 1961) 295 F.2d 136, and to some extent in *City of Santa Cruz* v. *MacGregor, supra* (1960) 178 Cal.App.2d 45, 54. Yet the parties here drew their agreement without regard to such legal niceties; they surely did not mean to differentiate between a present interest in a lease commencing in the future and a lease which only takes effect in the future. We do not believe that our decision should rest upon such contrived technicality, particularly as the distinction between vested and unvested rights is at best a confused one.[14] We construe the document before us as a lease in

[12]Tulley, The Shopping Center Lease, in California Land Security & Development, pp. 842, 850.

[13]Gray, The Rule Against Perpetuities (4th ed. 1942) p. 599.

[14]As we noted *supra*, it is not clear that the concepts of vested and contingent interests can properly be applied to leases. In any case, these concepts are not very useful (see generally Simes, Public Policy and The Dead Hand (1955) p. 68; Schuyler, *Should the Rule Against Perpetuities Discard its Vest?* (1958) 56 Mich.L.Rev. 683, 687) particularly in cases such as the present one in which little practical difference,

which the lessee's interest vests only upon completion of the building.[15]

Four contingencies, we are told, arise in the case of this lease to produce the possibility that the building may not be completed within the 21-year period of the statute: first, the process of construction might consume more than that period; second, the plans for the building might not be approved; third, the exceptions which excuse expeditious performance might delay completion beyond the statutory period; fourth, a building permit might not issue during such period. We examine each possibility in detail in order to demonstrate that such conjectures arise from two incorrect assumptions: (1) that cases involving the rule against perpetuities constitute a special legal preserve in which mechanical results will be condoned, and into which the accepted principle of reasonable construction cannot enter; (2) that even though an agreement by its terms does not transgress the rule against perpetuities, a violation may be predicated on the possibilities that the agreement will be broken and the parties unwilling to enforce their rights.

*First.* Plaintiffs' argument that the process of construction might be completed more than 21 years after the creation of the interest fails in the face of the requirements of the agreement that defendants begin construction "forthwith" upon approval of the completed plans, and "continue expeditiously" until the building is completed. The use of the terms "forthwith" and "continue expeditiously,"[16]

---

exclusive of the rule against perpetuities problem, exists between an interest contingent on a future event and a vested right to a term contingent on a future event.

[15]Alternatively, we could construe the document to be a contract to lease, since the rule against perpetuities applies to such contracts if they can be specifically enforced (see *Isen* v. *Giant Food, Inc.* (D.C. Cir. 1961) 295 F.2d 136, 137), and California law permits specific enforcement of contracts to lease real property (*Pike* v. *Hayden* (1950) 97 Cal.App.2d 606 [218 P.2d 578]).

[16]The following cases construed terms of the involved instruments to require vesting within a reasonable time and on that basis avoided finding a violation of the rule against perpetuities: *Isen* v. *Giant Food, Inc.* (D.C. Cir. 1961) 295 F.2d 136 (lessor required to "diligently pursue" an application for zoning variance); *Haggerty* v. *City of Oakland* (1958) 161 Cal.App.2d 407, 421-422 [326 P.2d 957] (Bray, J. dissenting) (lessor to construct building "with all due diligence"), and analyses of *Haggerty* in (1959) 47 Cal. L. Rev. 197, 198-200, (1959) 10 Hastings L.J. 439, and (1959) 6 U.C.L.A. L.Rev. 165, 167-168; *Myers* v. *Hardin* (1945) 208 Ark. 505 [186 S.W.2d 925] (trustees to distribute

and additional clauses,[17] contained in a contract which sets no specific date for completion of construction[18] imposes upon defendants an obligation to complete construction within a reasonable time.

Plaintiffs maintain, however, that the requirement for completion within a reasonable time cannot be applied to avoid a violation of the rule against perpetuities. This position finds support in *Haggerty* v. *City of Oakland* (1958) 161 Cal.App. 2d 407, 420 [326 P.2d 957], in which the court rejected a similar argument as "deceptively simple" and "unsound," and asserted that "The courts are not permitted to relax the rule against perpetuities. ... The rule itself contains no exceptions, and the courts should not create them."

The dissenting opinion in *Haggerty*, however, points out that the majority ruling does not accord with the weight of authority. (Pp. 423-424.) Not only have the courts evolved exceptions to the rule,[19] but the doctrine as to performance within a reasonable time constitutes in itself one such exception. Courts and scholars almost unanimously agree that provisions which make vesting contingent upon performance within a reasonable time, or some equivalent phrase, do not violate the rule "if, in the light of the surrounding circumstances, as a matter of construction 'a reasonable time' is

---

res "as soon as possible"); *Brandenburg* v. *Thorndike* (1885) 139 Mass. 102 [28 N.E. 575] (trustees to distribute res "at such time ... as may . . . be found expedient and practicable"); *Halifax* v. *Vaughn Constr. Co.* (Nova Scotia 1957) 9 D.L.R.2d 431, 440-441 (buildings to be commenced "as soon as practicably may be").

[17]The agreement also requires that construction be completed within 90 days after the building permit is obtained. We discuss this requirement under our fourth point.

[18]If an agreement fails to specify when performance is due, it is assumed that performance must take place within "a reasonable time." See generally 12 Cal.Jur.2d, Contracts, §§ 160-161 and cases there cited.

[19]An exception to the rule which has the effect of allowing an interest to remain uncertain beyond the rule period would, of course, present dangers of extensive fettering of property. Nevertheless, several exceptions of this type are well established, such as gifts to charity, rights of entry, possibilities of reverter, resulting trusts, and covenants running with the land. The "reasonable time" rule discussed in the opinion is a different, and less extensive type of exception. Although this concept avoids the invalidation of the document as violative of the rule against perpetuities, it so interprets the agreement as to ensure that the interest will vest or fail within the period of the rule. Other exceptions of this type are the rule that ambiguities should be construed against finding a violation of the rule against perpetuities (see opinion *infra* at p. 539) and certain of the rules relating to the closing of class gifts.

necessarily less than twenty-one years.'' (3 Simes & Smith, Future Interests (2d ed. 1956) § 1228 at p. 122.)[20] Many courts, in fact, presume that a "reasonable time" is less than the period of the rule.[21] In any event, a reasonable time in the present transaction, in the light of the circumstances,[22] must necessarily be a period far less than 21 years. We cannot accept that portion of *Haggerty* v. *City of Oakland* which expresses a contrary position and, to that extent, it is disapproved.

Plaintiffs further contend in this connection that if the delay in construction results from defendants' breach, the defendants cannot legally terminate the agreement, and the plaintiffs, possessing such a right, may choose not to exercise

---

[20]Accord, *Isen* v. *Giant Food, Inc.* (D.C. Cir. 1961) 295 F.2d 136, 138; *Haggerty* v. *City of Oakland* (1958) 161 Cal.App.2d 407, 423-424 [326 P.2d 957] (Bray, J., dissenting); (1959) 47 Cal.L.Rev. 197; (1959) 10 Hastings L.J. 439; (1959) 6 U.C.L.A. L.Rev. 165; see *Francis* v. *Superior Oil Co.* (10th Cir. 1939) 102 F.2d 732, 735; *Myers* v. *Hardin* (1945) 208 Ark. 505 [186 S.W.2d 925]; *Kirkland* v. *Odum* (1923) 156 Ga. 131 [118 S.E. 706]; *Gex* v. *Dill* (1905) 86 Miss. 10 [38 So. 193]; *Halifax* v. *Vaughn Constr. Co.* (Nova Scotia 1957) 9 D.L.R. 2d 431, 440-441; (1962) 37 Notre Dame Law. 561; cf. Gray, The Rule Against Perpetuities (4th ed. 1942) §§ 478, 480, 491 ("reasonable time" doctrine in powers of appointment).

[21]See *Shoemaker* v. *Newman* (D.C. Cir. 1933) 65 F.2d 208 [62 App. D.C. 120, 39 A.L.R. 1034]; *Belfield* v. *Booth* (1893) 63 Conn. 299, 306-308 [27 A. 585, 587-588]; *Harrison* v. *Kamp* (1946) 395 Ill. 11, 21-22 [69 N.E.2d 261, 267]; *Smith* v. *Renne* (1943) 382 Ill. 26 [46 N.E.2d 587]; *Brandenburg* v. *Thorndike* (1885) 139 Mass. 102 [28 N.E. 575]; *Plummer* v. *Roberts* (1926) 315 Mo. 627, 651, 661 [287 S.W. 316, 323-328]; *West Texas Bank & Trust Co.* v. *Matlock* (Tex. Com. App. 1919) 212 S.W. 937. These cases are discussed, but disapproved, in 3 Simes & Smith, Future Interests (2d ed. 1956) § 1228 at pp. 122-123. The legislative establishment of such presumptions, however, is advocated in Simes, Public Policy and the Dead Hand (1955) 77; Schuyler, *Should the Rule Against Perpetuities Discard Its Vest?* (1958) 56 Mich. L.Rev. 683, 724.

[22]For example, examination of the agreement shows that defendants were obliged to complete the building within 90 days after issuance of a building permit, a rate of construction which clearly shows the parties' desire to complete construction in the immediate future; that the provision (par. 17) apportioning additional real estate taxes apparently contemplates that the building would be completed before the 1959-1960 property tax assessment; and that paragraph 28, giving the lessor a conditional right to cancel the lease in 1965, assumes that the building has been completed and the lease in effect for several years by that date.

it.[23] Hence, it is argued, a possibility still exists that the construction will outlast the period of the rule.

Yet it must be clear that a document does not violate the rule against perpetuities if, by its terms, all contingent interests must vest or fail within the period of the rule, even though an unremedied breach of the terms might extend the period of uncertainty.[24] If the rule were otherwise, even a specific provision of this lease that construction be completed within 21 years would not insure the lease from attack as a perpetuity, since defendants, just as they could violate their duty to complete construction within a reasonable time, could violate this specific provision. As we stated earlier, we are not willing to predicate a transgression of the rule on the theory that agreements must be presumed to be broken and parties unwilling to enforce their rights.

*Second.* The argument that the plans for the building might not be approved within the statutory period can only stand if the lease is void for uncertainty; yet it is clearly valid in this respect. The lease provides that construction shall commence forthwith "upon approval of completed plans and specifications." Apparently "completed plans and specifications" refer to the plans which include the improvements to be added by plaintiffs, and the "approval" refers to approval by both parties.[25] Plaintiffs claim this approval may not be forthcoming.

If plaintiffs' argument were correct, the agreement would be void for uncertainty since either party could withhold his approval of the plans and forestall construction (*Kerr Glass Mfg. Corp.* v. *Elizabeth Arden Sales Corp.* (1943) 61 Cal. App.2d 55 [141 P.2d 938]). Yet neither party makes such an attack upon it. Nor could such an attack succeed. Only a very narrow area could conceivably become a ground of possible future uncertainty or disagreement: the plans called for by

[23]For discussion of this argument see Leach, *Perpetuities: New Absurdity, Judicial & Statutory Correctives* (1960) 73 Harv.L.Rev. 1318, 1322; (1959) 10 Hastings L.J. 439, 440; (1960) 39 N.C.L.Rev. 93, 96.

[24]Consider, for example, the typical case of a trust for lives in being plus 21 years. In many cases there will exist a slim but definite possibility that after the period of the trust has run the trustees may unlawfully refuse to surrender the res, and the beneficiaries may decline to sue, disable themselves from enforcing their rights, or even consent to the breach of the trust. Such possibilities have never been thought sufficient to invalidate the trust as a perpetuity.

[25]The provision was so construed by the District Court of Appeal (*Wong* v. *Di Grazia* (Cal.App.) 29 Cal.Rptr. 86, 88).

paragraph 27 are "complete," and the parties' assent to the agreement constitutes an approval of those plans; paragraph 7 obligates plaintiffs to comply with municipal regulations. Hence the only possibility of disapproval lies in defendants' rejection of plans which meet municipal requirements. But defendants cannot unreasonably withhold approval of plans and specifications.[26]

A minor possible ground of disagreement in an otherwise complete agreement will not render the agreement uncertain. ■ "Where the matters left for future agreement are unessential, each party will be forced to accept a reasonable determination of the unsettled point. ..." (*City of Los Angeles* v. *Superior Court* (1959) 51 Cal.2d 423, 433 [333 P.2d 745].) ■ As this court held in *Roy* v. *Salisbury* (1942) 21 Cal.2d 176, 184 [130 P.2d 706] "... the law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained."

■ The fact of the matter is that neither party here claims that the courts cannot construe the agreement to effectuate the reasonable intent of the parties and enforce the agreement. The contention seems rather that although courts may construe agreements to avoid an invalidation for uncertainty they may not similarly construe agreements to avoid violation of the rule against perpetuities. Although the courts, at times, have been relentless in their application of the rule against perpetuities, they have seldom carried relentlessness to such extremes. Both the California cases,[27] and those of a majority of other states,[28] hold that a document

---

[26]Cf. *Leboire* v. *Royce* (1960) 53 Cal.2d 659, 672-673 [2 Cal.Rptr. 745, 349 P.2d 513] and authorities there cited.

[27]*Alamo School Dist.* v. *Jones* (1960) 182 Cal.App.2d 180, 190 [6 Cal.Rptr. 272]; *Berry* v. *Lebus* (1922) 56 Cal.App. 378, 382-383 [205 P. 471]; See Civ. Code, § 3451; *Oliver* v. *Schene* (1960) 182 Cal.App.2d 473, 480-482 [6 Cal.Rptr. 461]. See also *Sheean* v. *Michel* (1936) 6 Cal.2d 324 [57 P.2d 127], where the court refused to construe a provision in a will to prevent violation of the rule against perpetuities because the proposed construction would defeat the intention of the testator and would defeat just claims of creditors.

[28]Rest., Property (1944) § 375; 6 American Law of Property (Casner ed. 1952) pp. 118-122; Simes, Public Policy and the Dead Hand (1955) p. 74; 3 Simes & Smith, Future Interests (2d ed. 1956) §§ 1288-1289; Leach, *Perpetuities in a Nutshell* (1938) 51 Harv.L.Rev. 638, 657-659; Lynn, *Reforming the Common Law Rule Against Perpetuities* (1961) 28 U.Chi.L.Rev. 488, 492-499; Schuyler, *Should the Rule Against Perpetui-*

should be interpreted if feasible to avoid the conclusion that it violates the rule against perpetuities.[29]

*Third.* Because the agreement provides that the lessor's obligation to construct the building expeditiously is "subject to material and/or labor shortages, strikes, lockouts, governmental actions and all causes beyond the control of the Lessor," plaintiffs contend that such events might excuse the lessor from performance for a period in excess of 21 years. This clause, however, does not alter the fact that the parties contracted for a building to be completed in a reasonable time, that such reasonable time is far less than 21 years, and that failure to complete construction within the expected time will permit the parties to terminate the agreement. The clause simply alters the legal characterization of a failure to complete construction in the contingencies mentioned from that of a breach of duty, for which the lessor may be held responsible, to that of a commercial frustration, for which neither party may be held responsible.[30]

*Fourth.* Plaintiffs contend that the building may not be constructed until a building permit is obtained and that such permit may conceivably not issue within the period of the rule. In *Isen* v. *Giant Food, Inc., supra,* (D.C. Cir. 1961) 295 F.2d 136, a case involving an "on completion lease" in which construction turned upon the issuance of a zoning variance, the court stated, "We think, however, that the agreement required that zoning for commercial purposes, if obtained at all, must be obtained within a reasonable time and

---

*ties Discard its Vest?* (1958) 56 Mich.L.Rev. 683, 700-701; see e.g., *Willis* v. *Hendry* (1940) 127 Conn. 653, 670-673 [20 A.2d 375, 383-384]; *Belfield* v. *Booth* (1893) 63 Conn. 299, 304-308 [27 A. 585, 586-588]; *Worcester County Trust Co.* v. *Marble* (1944) 316 Mass. 294 [55 N.E.2d 446]; *Brandenburg* v. *Thorndike* (1885) 139 Mass. 102 [28 N.E. 575]; *Plummer* v. *Roberts* (1926) 315 Mo. 627, 655-661 [287 S.W. 316, 325-328]; cf. *Edgerly* v. *Barker* (1891) 66 N.H. 434 [31 A. 900, 28 L.R.A. 328].

29Plaintiffs do not contend that this provision violates the rule against perpetuities because the parties may choose not to resort to necessary judicial assistance but simply persist in disagreement over the plans and specifications. In any case, such a contention could be adequately rebutted by reasoning similar to that in the opinion concerning the possibility that if the defendants fail to complete construction within a reasonable time, the plaintiffs might choose not to terminate the agreement.

30For the doctrine of commercial frustration as applied to leases, see *Lloyd* v. *Murphy* (1944) 25 Cal.2d 48 and cases cited at p. 53 [153 P.2d 47].

that such time, in the circumstances of this case, is certainly within the period of perpetuities.'' (Pp. 137-138.) (Accord, *Francis* v. *Superior Oil Co., supra.*) This analysis, we believe, applies here to the acquisition of a building permit.[31]

 We conclude that all rights established by the agreement arise within the 21-year period and that any breach of the agreement would be remediable within such period. Since the interest then does not vest or fail later than 21 years after its creation, the rule against perpetuities does not apply.

Having sustained the legality of the agreement, we turn to the remaining contentions of the parties. We point out briefly why we find no merit in the principal points which plaintiffs postulate for their appeal, and we set forth the reasons for our disposition of the issues raised on the cross-appeal.

Plaintiffs vainly argue that the facts and the law refute the trial court's finding that plaintiffs were obligated to pay for the installation of the sprinkler system. The terms of the agreement, [32] as well as the testimony,[33] support the finding. (See *Bellwood Discount Corp.* v. *Empire Steel Buildings Co.* (1959) 175 Cal.App.2d 432 [346 P.2d 467].) Although plaintiffs contend that the lease must fail because it authorizes defendants to construct a building in violation of the build-

---

[31]We should note here that the specific argument of plaintiffs on the matter of the building permit is clearly untenable. Plaintiffs contend that a building permit will never be issued because the defendants' construction plans do not include a sprinkler system. As is pointed out in the opinion, *infra*, at p. 541, plaintiffs are contractually obliged to install the sprinklers. The plans accompanying the agreement do not include sprinklers because they include only those items to be built by defendants, but the plans to be submitted with the application for a building permit will, we presume, include also items to be built by the plaintiffs.

[32]Paragraph 7 states: ''That the Lessee will, at his sole cost and expense, comply with all requirements of all Municipal, State and Federal authorities now in force, ... pertaining to the said premises, occasioned by or affecting the use to which the premises ... are to be put by the Lessee. . . .'' Paragraph 27 states that ''Lessor shall forthwith commence the construction ... in accordance with the plans and specifications noted thereon. ... Said plans and specifications are complete, and the Lessor shall not be required to provide or pay for any additional construction.''

[33]Defense witnesses testified that the parties intended that defendants build only a building shell and that plaintiffs would purchase and install the interior fixtures, which purchase and installation constituted a substantial part of the consideration to be received by defendants.

ing code, the agreement provides that the lessor construct the shell of the building and that the lessee make the alterations requisite to compliance with the building code; the completed structure would accordingly meet the code requirements. The trial court's exclusion of the testimony of the expert Morgan properly rests upon the inadmissibility of inquiry as to who, as between the lessee and lessors, is responsible in the usual course of business for installing a sprinkler system. The expert's estimate of majority practice would not illume this specific agreement. If plaintiffs intended such proffered evidence to establish a business custom they failed to lay a proper foundation for its introduction and to submit, upon its exclusion, a proper objection by means of an offer of proof.[34]

Defendants on cross-appeal first attack the refusal of the trial court to permit an amendment to the pretrial order to show a larger amount of rental loss. Although defendants argue that the ruling rests upon a misconception of the role of the pretrial order, the ruling could quite properly stem from the fact that the amendment was unnecessary[35] and the sought damages too speculative.[36]

Defendants secondly point out that they incurred an additional expense for engineering and consulting fees and for

[34]On the necessity of an offer of proof in this situation, see Witkin, California Evidence (1958) § 713.

[35]The original claim of $25,000 for loss of rent remained in the pretrial order. The lesser amount of $8,100, which defendants believed the proof sustained and which they sought to insert in the pretrial order, was included in the larger sum. The court could award the $8,100 figure without amending the pretrial order.

[36]The trial court found ''that the other claimed items of damage are too remote and speculative, or are not items of damage because they were of value to cross-complainants in connection with the building subsequently erected by them.'' As to defendants' claim for loss of rental, the evidence presented by defendants at trial was not adequate to enable the trial court to determine damages under any of the available theories. Defendants might have been entitled to the difference between the rent due under their lease with plaintiffs and the reasonable rental value of the property, but no proof was presented that the rent under the new lease represented the reasonable rental value. Alternatively, defendants might have claimed the differential in rent between their lease with plaintiffs and the new lease, but obviously adjustment would have been compelled by the fact that the new lease involved a different building, and might have differed from the lease which plaintiffs in terms other than the amount of rent. No evidence was presented to assist the court in making adjustments for such differences. Consequently, whether the actual loss to defendants approximates their claim of $75 a month is largely a matter of speculation.

contractor's charges which the trial court may have disallowed because of the pretrial order. Pretrial rule 216 permits amendment of the pretrial order at trial to prevent "manifest injustice."[37] Such language reposes in the trial judge a large discretion, which was exercisable in the present circumstances. The record does not disclose whether the trial court believed amendment of the pretrial order foreclosed such discretionary relief or whether the court exercised its discretion and rejected defendants' claim. We therefore remand this case to the trial court in order that it may more clearly exercise its discretionary authority. At the same time the trial court, pursuant to paragraph 13 of the lease, may compute and award such additional attorney's fees for the prosecution of this appeal as the court determines defendants should receive.

As to the main issue, the application of the rule against perpetuities, we conclude that we could invoke it only by conceiving that the application of the rule arose from the conjecture that although the contract certainly called for performance within a time for less than 21 years, it would be broken and the aggrieved party would not enforce it within that time. We must assume that out of the ashes of the nonperformance and nonenforcement of the contract there arises, like the phoenix, the new form of the rule against perpetuities. We do not believe obligations should be obliterated upon such conjecture.

The portion of the judgment denying defendants' recovery for additional expenses for engineering and consulting fees, and for contractor's charges, is reversed and the case remanded for further proceedings consistent with this opinion. In all other respects the judgment is affirmed. The trial court shall award to defendants such additional attorney's fees for the prosecution of this appeal as the court determines defendants should receive. The respective parties shall bear their own costs on appeal.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., and Peek, J., concurred.

---

[37]Pretrial rule 216 states: "When filed, the pretrial conference order becomes a part of the record in the case and, where inconsistent with the pleadings, controls the subsequent course of the case unless modified at or before trial to prevent manifest injustice. ..." (Cal. Rules of Court, rule 216 [formerly Rules for the Superior Courts, rule 8.8].)

PETERS, J.—I dissent.

Every argument advanced by the majority was considered and rejected in *Haggerty* v. *City of Oakland*, 161 Cal.App.2d 407 [326 P.2d 957]. That case, now disapproved by the majority, in my opinion, was and is sound.

The two basic fallacies in the majority opinion are, first, that it necessarily holds that whether or not the rule against perpetuities should or should not apply depends upon the reasonable probabilities as they existed when the lease was executed, or by what developed afterwards, and, secondly, it holds that the rule is outmoded for the needs of modern society and should be strictly limited in its application. Both of these premises are wrong.

The majority opinion talks about the assumed evils of a "rigid mechanistic operation of the rule," about the "esoteric learning" surrounding it, about the rule only existing in the "dim memories from student days," about the reluctance of the majority to apply a "rigid application of the rule to the instant facts," about the rule originating during the "mercantilistic period of English history" fitted for the "social order of 1682," about the "overextension" of the rule during the 19th century to "commercial transactions," about the inapplicability of the theory of the rule to the needs of "modern society," and then concludes that since "the rule against perpetuities was born in a society which extolled the tight ownership of inherited real property, it does not facilely operate as to commercial agreements in today's dynamic economy." Then the majority state that they "do not propose to apply the rule in the rigid or remorseless manner characterized by some past decisions," and that they will "interpret it reasonably, in the light of its objectives and the economic conditions of modern society." Thus do the majority by a process of "construction," cavalierly overrule a large body of law, and defeat the public policy of this state set forth in section 715.2 of the Civil Code, adopted not in 1682 but in 1951.[1]

Leases, unquestionably, fall within the rule requiring

---

[1]That section, after stating the rule, concludes: "It is intended by the enactment of this section to make effective in this State the American common-law rule against perpetuities." This section was added to our code in 1951. (Stats. 1951, ch. 1463, p. 3442, § 2.) This new section reenacted existing law, and carried out the public policy set forth in our state Constitution. (*Estate of Sahlender*, 89 Cal.App.2d 329 [201 P.2d 69].)

estates to vest within the prescribed period. (*Epstein* v. *Zahloute*, 99 Cal.App.2d 738 [222 P.2d 318]; *Dallapi* v. *Campbell*, 45 Cal.App.2d 541 [114 P.2d 646]; cases collected 41 Am.Jur., Perpetuities and Restraints on Alienation, § 34, p. 78. See also Civ. Code, §§ 717 and 718.)

The recognized authorities in this field hold or imply that a lease not to take effect until completion, because of the uncertainty of the completion date, violates the rule. (Simes and Smith, The Law of Future Interests (2d ed. 1956) § 1242, p. 153; Gray, The Rule Against Perpetuities (4th ed. 1942) p. 353; 2 Tiffany, Real Property (3d ed. 1939) § 406, p. 171.)

The majority opinion necessarily stands for the proposition that whether or not the rule applies depends upon the reasonable probabilities. That is not the proper test. As Gray points out: "It is not enough that a contingent event may happen, or even that it will probably happen, within the limits of the Rule against Perpetuities; if it can possibly happen beyond those limits, an interest conditioned on it is too remote."[2] Many cases have established the rule that probabilities have no relevance to the question. The only question presented in such cases is whether there is the barest possibility at the time of the creation of the interest that it might not vest within the required time, and what happens later is totally irrelevant. (*Estate of Johnston*, 47 Cal.2d 265, 270 [303 P.2d 1]; *Estate of Sahlender, supra*, 89 Cal.App.2d at p. 348; cases collected 38 Cal.Jur.2d, Perpetuities and Restraints on Alienation, § 29, p. 481.)

The majority opinion disregards these well-settled rules. It necessarily stands for the proposition that whether or not the rule applies depends not on the possibilities as they existed at the time the instrument creating the interest was executed, but on the reasonable probabilities as they then existed. Thus do the majority treat the rule as if it were a rule of construction to be applied to the questioned document in interpreting it. The majority not only disregard but seriously question the rule set forth by Gray that "The Rule against Perpetuities *is not a rule of construction, but a peremptory command of law.* It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore every provision in a will or settlement is to be construed as if the Rule did not exist, and then to the provi-

---

[2]Gray, The Rule Against Perpetuities (4th ed. 1942) pages 207-208.

sion so construed *the Rule is to be remorselessly applied.*"[3] (Italics added.)

The majority have clearly modified the rule as it has heretofore been uniformly construed, by broadly questioning the prior cases that have "remorselessly applied" it, and by broadly hinting that the rule has been outgrown, and should be disregarded except in a limited number of cases, because of the nature of today's economy. In so doing the court has placed a heavy hand indeed on section 715.2 of the Civil Code. The people in the Constitution, and the Legislature as late as 1951, by the passage of section 715.2, determined the public policy of this state. It might well be asked why, if the Legislature did not want the rule to operate in our present economy, did it reenact the rule in 1951? And why, if the Legislature did not intend that section 715.2 should apply to "on completion" leases, has it not amended that section since 1958 when *Haggerty* v. *City of Oakland, supra,* 161 Cal.App.2d 407, was decided? The majority not only disregard the public policy set forth in that section, but they confuse the law in a field where it should be certain, and they encourage litigation to challenge what, until now, was well settled law.

I would reverse the judgment.

---

[3] Gray, The Rule Against Perpetuities (4th ed. 1942) page 599.